**FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 25-10547

_____

SCHRADE JONES,
CARTER GILLIAM,

*Plaintiffs-Appellants,*

*versus*

UNITED STATES OF AMERICA,
TENNESSEE VALLEY AUTHORITY,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 5:22-cv-00620-LCB

_____

Before ROSENBAUM, KIDD, and WILSON, Circuit Judges.

KIDD, Circuit Judge:

Schrade Jones and Carter Gilliam went fishing one night on Lake Guntersville in Alabama, and their boat collided with an unmarked duck blind. They sued the United States and the Tennessee Valley Authority ("TVA") in admiralty for negligence and wantonness, alleging that Defendants failed to mark, remove, or warn of the duck blind. In this appeal, we consider whether Defendants are entitled to sovereign immunity pursuant to the Suits in Admiralty Act ("SAA") and the Tennessee Valley Authority Act ("TVA Act").

We hold that the district court did not err in relying on *Williams v. United States*, 747 F.2d 700 (11th Cir. 1984), and its progeny to dismiss Plaintiffs' claims under the SAA. We therefore affirm the district court's order as it pertains to the SAA. That resolves all claims against the United States (acting through its agents, the Coast Guard and the Army Corps of Engineers).

But we conclude that the TVA may be sued under the TVA Act's sue-and-be-sued clause. So we reverse the dismissal of Plaintiffs' claims against the TVA under the TVA Act, and we remand the case for further proceedings against the TVA.

## I. BACKGROUND

A. *Factual Background*

One summer night, Schrade Jones and Carter Gilliam were bowfishing on Lake Guntersville in Jackson County, Alabama. As they crossed the lake at approximately 25 miles per hour, they struck an unmarked and partially submerged duck blind. Jones and Gilliam were severely injured.



Unknown individuals built the duck blind (pictured above) sometime before 2007. Its purpose was to conceal duck hunters. This blind was not marked with buoys or other materials that would have warned boaters of its presence. The duck blind was affixed to submerged land that was purchased in the 1930s by the TVA, a federally owned corporation and agent of the United States. Lake Guntersville is an impoundment of the Tennessee River and is a navigable water of the United States. The U.S. Coast Guard, the U.S. Army Corps of Engineers (the "Corps"), and the TVA each have distinct regulatory responsibilities for management of navigable waterways.

B. *Procedural History*

Plaintiffs allege that the United States (acting through its agents, the Coast Guard and the Corps) and the TVA (collectively, the "Defendants") failed to mark, remove, or warn of the duck blind. They brought negligence and wantonness claims against Defendants in admiralty pursuant to the immunity waivers in the

Suits in Admiralty Act, 46 U.S.C. § 30903(a), and the Tennessee Valley Authority Act, 16 U.S.C. § 831c(b). Plaintiffs alleged that Defendants' sovereign immunity is waived by the SAA and that the TVA's immunity is "additionally or alternatively waived through its enabling legislation, the TVA Act."

Defendants moved to dismiss for lack of jurisdiction, arguing that the discretionary-function exception in the Federal Tort Claims Act ("FTCA") immunized any decision they took relating to the duck blind. The district court granted the motions, explaining that Plaintiffs' claims could proceed only with the SAA's waiver of sovereign immunity, which "is subject to the discretionary-function exception found in the [FTCA]." In so holding, the district court cited a case that traces its pedigree to *Williams v. United States*, 747 F.2d 700 (11th Cir. 1984), *aff'g and adopting Williams ex rel. Sharpley v. United States*, 581 F. Supp. 847 (S.D. Ga. 1983). The district court then found that the challenged conduct was discretionary and immunized Defendants from suit. Plaintiffs timely appealed.

C. *Relevant Statutory Authority*

Three statutory provisions are at work in this case: two that waive the government's sovereign immunity and one that reinstates it. Their interplay drives our analysis.

The SAA expressly permits suits "against the United States or a federally-owned corporation" where "a civil action in admiralty could be maintained" if "a private person or property were involved." 46 U.S.C. § 30903(a).

The TVA Act provides that "the [TVA] . . . [m]ay sue and be sued in its corporate name." 16 U.S.C. § 831c(b).

The FTCA waives the federal government's sovereign immunity from suit as to certain torts committed by employees, 28 U.S.C. § 1346(b)(1), but that waiver is subject to various exceptions that reinstate sovereign immunity, *id.* § 2680. Relevant here is the discretionary-function exception in § 2680(a), which bars any claim against the government that is based on an official's exercise of discretionary functions. This exception bars suits challenging decisions that "involv[e] an element of judgment or choice" and are "based on considerations of public policy." *United States v. Gaubert*, 499 U.S. 315, 322–23 (1991) (alteration in original).

## II. STANDARD OF REVIEW

This Court "review[s] *de novo* the district court's order granting a motion to dismiss for lack of subject matter jurisdiction." *Dalrymple v. United States*, 460 F.3d 1318, 1324 (11th Cir. 2006). "Determinations of sovereign immunity are questions of law we review *de novo*." *Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.*, 633 F.3d 1297, 1313 (11th Cir. 2011). Whether a claim is barred by the FTCA's discretionary-function exception is a question of law that is reviewed de novo. *See Douglas v. United States*, 814 F.3d 1268, 1273 (11th Cir. 2016). Constitutional issues, non-constitutional issues, issues of law in mixed questions of law and fact, and rulings on the interpretation and application of a statute are reviewed de novo. *See United States v. Shamsid-Deen*, 61 F.4th 935, 944–46 (11th Cir. 2023).

### III. DISCUSSION

A. *The District Court Did Not Err in Relying on* Williams

In *Williams*, we held that the SAA contains an implicit discretionary-function exception that shields the government from liability for discretionary decisions. 747 F.2d 700. By importing immunity back into a statute designed to limit it, Plaintiffs contend, *Williams* "usurped Congress's legislative power by unconstitutionally rewriting the SAA." But no matter how right Plaintiffs may be about how wrong *Williams* is, our precedent remains firm unless this Court, sitting en banc, changes it or the Supreme Court overrules it. *See, e.g.*, *United States v. Emmanuel*, 565 F.3d 1324, 1332 (11th Cir. 2009) ("We are bound to apply the precedent of a prior panel even if we are convinced that the prior panel is mistaken about the proper analysis . . . ."); *United States v. Kaley*, 579 F.3d 1246, 1255 (11th Cir. 2009) ("We may disregard the holding of a prior opinion only where that holding is overruled by the Court sitting en banc or by the Supreme Court." (citation modified)). Neither of these events has occurred.

Anticipating this result, Plaintiffs argue that the Supreme Court and our prior panel decisions have rendered non-binding *Williams* and its progeny, and the district court erroneously relied on this line of cases to dismiss their claims. *See E. Transp. Co. v. United States*, 272 U.S. 675 (1927); *De Bardeleben Marine Corp. v. United States*, 451 F.2d 140 (5th Cir. 1971); *Thacker v. Tenn. Valley*

*Auth.*, 139 S. Ct. 1435 (2019). We examine each challenge to *Williams*, but we ultimately find that Plaintiffs run headfirst into our prior-precedent rule at every turn.

### 1. *Eastern Transportation Co. v. United States*

In *Eastern Transportation Co. v. United States*, the plaintiff's barge struck a sunken steamship previously used by the United States as a merchant vessel, causing the barge to sink. 272 U.S. at 682. The sunken steamship "was not marked with a buoy or beacon by day or a lighted lantern by night, and was not removed by the United States." *Id.* The plaintiff sued the government in admiralty under the SAA, alleging the government negligently failed to mark or remove the wreck as required by federal navigation law. *Id.* at 682, 686–87. The government argued, among other things, that the court lacked jurisdiction and that the plaintiff's claims "related to a failure on the part of the officers and agents of the United States to perform a purely governmental function, or to the alleged negligence of such officers and agents in the performance of such a function, and created no liability on the part of the United States for which it was suable." *Id.* at 682–83.

The Supreme Court held that the government can be held liable like a private shipowner in admiralty, including for negligence in failing to mark or remove a wreck that endangers navigation. *Id.* at 688–91. It concluded that an owner's "leaving of a wreck in a navigable channel . . . without notice of the danger and without immediate removal is unlawful, mak[ing] such omission a mar-

itime tort which, [under the SAA], may be recovered for in . . . admiralty courts against the United States without anomaly." *Id.* at 688. In other words, "the United States as owner [of the sunken steamship] . . . must assume the personal liability for negligence in such [SAA] cases exactly as a private owner would." *Id.* at 690–91. Because the government's sunken steamship caused the hazard and the wreck remained unmarked, the plaintiff could pursue an admiralty claim. *Id.* at 692–93.

Plaintiffs contend that *Eastern* "clearly held that the SAA's waiver is sweeping," rendering the government suable in admiralty "without anomaly" and "exactly as a private person." The district court thus erred, Plaintiffs say, when it failed to follow this settled Supreme Court decision. Not so.

*Eastern* has no bearing on this Court's precedents. "[U]nder our prior-precedent rule, even if our Court 'overlooked' a reason—including a Supreme Court case—we remain bound by our prior precedent." *Sabal Trail Transmission, LLC v. 18.27 Acres of Land in Levy Cnty.*, 59 F.4th 1158, 1174 (11th Cir. 2023). "[T]here is never an exception carved out for overlooked or misinterpreted Supreme Court precedent." *United States v. Fritts*, 841 F.3d 937, 942 (11th Cir. 2016). Thus, any contention that *Williams* and its progeny overlooked *Eastern* is beside the point.

Regardless, *Eastern* is not inconsistent with this Court's precedent. *Eastern* did not address whether the SAA's waiver of sovereign immunity is subject to a discretionary-function exception. Indeed, *Eastern* predates the FTCA's enactment and therefore had no

occasion to consider whether its discretionary-function exception could be grafted onto the SAA. Moreover, unlike the instant case, *Eastern* involved the government's potential liability under maritime law as the *owner* of an obstruction to navigation and the government's failure to perform a *mandatory* (i.e., non-discretionary) statutory duty. These facts contextualize *Eastern*'s "without anomaly" language on which Plaintiffs heavily rely. By contrast, the duck blind is a "privately-owned" structure, and no failure to perform a mandatory statutory duty is at issue. Under our prior-precedent rule, then, *Eastern* cannot render *Williams* inapplicable.

### 2.   *De Bardeleben Marine Corp. v. United States*

*De Bardeleben Marine Corp. v. United States* involved a misrepresentation claim under the SAA for injuries and property damage caused by reliance on a government nautical chart that did not show an underwater gas pipeline. 451 F.2d at 141–43. A tugboat's anchor became snagged on the undisclosed pipeline and efforts to free the anchor ruptured the pipeline, resulting in an explosion and fire. *Id.* at 141. The district court found the government partially at fault for the accident. *Id.* at 142. On appeal, the government contended that our predecessor court should interpret the SAA to include "all of the exceptions of FTCA, and especially that against misrepresentation, § 2680(h)." *Id.* at 145. We "reject[ed] these contentions" for wholesale incorporation of FTCA exceptions into the SAA, observing that "[r]eimportation of FTCA provisions or exceptions produces obviously unintended and irrational distinctions."

*Id.* at 145–46 (citation modified). The court then reversed the judgment against the government on the ground that "no duty was breached" because a new (and correct) chart edition had been published and announced to mariners, rendering the chart edition in use on the tugboat "obsolete." *Id.* at 149.

Plaintiffs contend that *De Bardeleben* holds that the SAA is not subject to FTCA defenses. They reason that the former Fifth Circuit explicitly rejected the notion that Congress meant to import *all* of the exceptions of FTCA into the SAA, which necessarily includes the FTCA's discretionary-function exception. That holding, Plaintiffs say, became binding precedent and has never been overruled by this Court sitting en banc, even though subsequent panel decisions, starting with *Williams*, hold that the discretionary-function exception applies to SAA claims. Accordingly, Plaintiffs challenge the district court's reliance on what they believe is the nonbinding panel decision in *Williams*.

We conclude that *De Bardeleben* is not inconsistent with this Court's precedent because its holding does not extend to whether the SAA's waiver of sovereign immunity excepts discretionary functions. To start, the issue in *De Bardeleben* was the FTCA's misrepresentation exception in § 2680(h), not the discretionary-function exception in § 2680(a). The decision mentions the discretionary-function exception in passing but otherwise engages in no meaningful analysis of the exception. *See De Bardeleben*, 451 F.2d at 146 n.15.

Moreover, because we resolved *De Bardeleben* in favor of the government on the ground that no duty was breached, the comment about FTCA exceptions arguably was unnecessary to the conclusion and thus constitutes non-binding dicta. *See United States v. Birge*, 830 F.3d 1229, 1232–33 (11th Cir. 2016) (explaining that our prior-precedent rule "applies only to holdings, not dicta"). Subsequent cases from this Circuit support this interpretation. *See Mid-S. Holding Co. v. United States*, 225 F.3d 1201, 1204 n.5 (11th Cir. 2000) (classifying *De Bardeleben*'s comments as "dicta"); *U.S. Fire Ins. Co. v. United States*, 806 F.2d 1529, 1535 n.12 (11th Cir. 1986) (same), *abrogated on other grounds by Cranford v. United States*, 466 F.3d 955, 959 (11th Cir. 2006). Several sister circuits have reached the same conclusion. *See Gercey v. United States*, 540 F.2d 536, 539 n.4 (1st Cir. 1976); *Bearce v. United States*, 614 F.2d 556, 559 (7th Cir. 1980); *Canadian Transp. Co. v. United States*, 663 F.2d 1081, 1085 (D.C. Cir. 1980). The successor Fifth Circuit has likewise disclaimed the language as dicta, stating that "*DeBardeleben* is not binding in this Circuit, even by way of dictum, and . . . there are no authoritative holdings in this Circuit on the issue of whether a discretionary function exception is applicable under the SAA." *Wiggins v. United States ex rel. Dep't of Army*, 799 F.2d 962, 964–65 (5th Cir. 1986).

Even if tension exists between *De Bardeleben* and this Court's subsequent caselaw, this Court has "a duty to reconcile, where possible, prior precedents that appear to be in tension." *Edwards v. U.S. Att'y Gen.*, 97 F.4th 725, 736 (11th Cir. 2024). Citing an "earlier decision . . . does not free [the Court] from" subsequent binding panel precedent where the earlier decision "is distinguishable." *Id.*

*De Bardeleben* and *Williams* are readily reconciled on the ground already recognized by many courts of appeals—that the former did not decide the discretionary-function issue. At most, Plaintiffs' arguments amount to a contention that *Williams* and its progeny misinterpreted the scope of *De Bardeleben*, but this Court has "categorically reject[ed] any exception to the prior panel precedent rule based upon a perceived defect in the prior panel's reasoning or analysis as it relates to the law in existence at that time." *Smith v. GTE Corp.*, 236 F.3d 1292, 1303 (11th Cir. 2001). *De Bardeleben* therefore cannot justify disregarding this Court's subsequent decisions recognizing a discretionary-function exception in the SAA.

### 3.  *Thacker v. Tennessee Valley Authority*

In *Thacker v. Tennessee Valley Authority*, the plaintiff sued the TVA after his boat collided with a downed and unmarked TVA powerline, injuring the plaintiff and killing his passenger. 139 S. Ct. at 1440. The TVA moved to dismiss, arguing that its decisions about how, or even whether, to warn of the downed line were immunized from tort liability, notwithstanding the TVA Act's broad sue-and-be-sued waiver. *Id.* The district court determined that the TVA had exercised discretionary functions, so it dismissed the case for lack of jurisdiction. *Id.* This Court affirmed. *Id.* The Supreme Court reversed, holding that the waiver of sovereign immunity in the TVA Act's sue-and-be-sued clause is not subject to a discretionary-function exception of the kind in the FTCA. *Id.*

The Supreme Court began with the language of the TVA Act, stating that "[n]othing in the statute . . . expressly recognizes

immunity for discretionary functions. . . . [T]hat law provides simply that the TVA '[m]ay sue and be sued.'" *Id.* (citing 16 U.S.C. § 831c(b)). Further, "[b]y the TVA Act's terms, that waiver is subject to exceptions as specifically provided in the statute itself." *Id.* (citation modified). "But the TVA Act contains no exceptions relevant to tort claims, let alone one turning on whether the challenged conduct is discretionary." *Id.* Congress also "made clear that the FTCA [in § 2680(*l*)] does not apply to any claim arising from the activities of the TVA." *Id.* at 1440–41 (citation modified). The Supreme Court concluded that "the FTCA's discretionary function provision has no relevance to this case." *Id.* at 1441.

Plaintiffs assert that under *Thacker*'s reasoning, the SAA's waiver of immunity is not subject to the discretionary-function exception. Thus, Plaintiffs contend, the district court erroneously relied on Circuit precedent that had been abrogated by *Thacker*. We disagree.

*Thacker* did not abrogate this Court's precedent. While an intervening decision of the Supreme Court can overrule the decision of a prior panel of our court, the Supreme Court decision "must be clearly on point." *United States v. Lightsey*, 169 F.4th 1241, 1251 (11th Cir. 2026) (citation modified). *Thacker* did not concern the SAA. The question there was whether the TVA Act's sue-and-be-sued clause contained a discretionary-function exception. The Supreme Court held it did not and then examined whether the TVA Act "might contain implied exceptions" under *Federal Housing*

*Administration v. Burr*, 309 U.S. 242 (1940). *Thacker*, 139 S. Ct. at 1440–41 (citation modified).

Under *Burr*, a sue-and-be-sued clause "should be liberally construed" but is nonetheless subject to an implied restriction (1) when a suit would conflict with the statutory scheme or (2) when it would seriously interfere with governmental functions. *Thacker*, 139 S. Ct. at 1441. The *Thacker* court concluded that neither *Burr* prong justified an across-the-board exception for discretionary functions, *id.* at 1443, but that "if the conduct at issue is governmental" rather than commercial, the district court should consider whether "an implied limit on the clause bars the suit" under *Burr*'s second prong, *id.* at 1444.

The SAA's waiver of sovereign immunity, in contrast, is not a sue-and-be-sued clause but a conventional waiver subject to the principle that "statutes which waive immunity of the United States from suit are to be construed strictly in favor of the sovereign." *McMahon v. United States*, 342 U.S. 25, 27 (1951); *see also Justice v. United States*, 6 F.3d 1474, 1478 (11th Cir. 1993) ("[W]e do not doubt the validity of the general proposition that immunity-waiving statutes should be construed narrowly . . . ."). The *Burr* framework that the Supreme Court applied in *Thacker* does not apply to the facts before us.

So, even if *Thacker*'s reasoning weakened the justification for *Williams* and its progeny, that cannot justify disregarding binding precedent. "In addition to being squarely on point, the doctrine of adherence to prior precedent also mandates that the intervening

Supreme Court case actually abrogate or directly conflict with, as opposed to merely weaken, the holding of the prior panel." *Lightsey*, 169 F.4th at 1251 (citation modified). "Obedience to a Supreme Court decision is one thing, extrapolating from its implications a holding on an issue that was not before that Court in order to upend settled circuit law is another thing." *Main Drug, Inc. v. Aetna U.S. Healthcare, Inc.*, 475 F.3d 1228, 1230 (11th Cir. 2007). Plaintiffs have not shown that *Thacker* is clearly on point or directly conflicts with our caselaw. *Thacker* therefore has not abrogated this Court's precedent recognizing a discretionary-function exception to the SAA, which remains binding on this panel.

In sum, *Williams* and its progeny remain binding precedent. The district court correctly relied upon this line of cases to conclude that the SAA has a discretionary-function exception in our Circuit.

B. *The Discretionary-Function Exception Shields Defendants from Liability*

The FTCA shields the United States from liability for tort claims based upon a federal employee's "exercise or performance" of (or failure to exercise or perform) "a discretionary function or duty," "whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). To determine whether the discretionary-function exception applies, courts employ a two-part test.

First, courts determine whether the conduct at issue was "discretionary in nature"—that is, whether the conduct involved

"an element of judgment or choice." *Gaubert*, 499 U.S. at 322 (citation modified). A government employee lacks discretion for this purpose if a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow" because, in such cases, "the employee has no rightful option but to adhere to the directive." *Id.* (citation modified).

Second, courts determine whether the actions taken were "of the kind that the discretionary function exception was designed to shield"; namely, decisions that are "susceptible to policy analysis." *Id.* at 322–23, 325 (citation modified). The exception exists to "prevent judicial second-guessing of . . . administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.* at 323 (citation modified). "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Id.* at 324.

Plaintiffs contend that the discretionary-function exception does not protect Defendants' alleged misconduct because the wrongs alleged—failing to remove or warn about a hazardous structure affixed to government land in a navigable waterway—are not the sort of policy-laden, discretionary acts that the exception was meant to immunize. Plaintiffs further assert that there is no evidence that Defendants made a policy-grounded choice not to

remove or to warn of the duck blind, especially because Defendants conceded they were unaware of the duck blind's existence until this litigation.

The district court correctly held that the discretionary-function exception applies to the facts at hand. At step one of *Gaubert*, the court correctly concluded that the government's conduct— that is, its alleged failure to mark, remove, or warn of the duck blind—involved an element of judgment or choice. Plaintiffs identified no federal statute, regulation, or policy that prescribes a course of action that employees must follow. *Id.* at 322. In contrast, the relevant statutes and regulations give the Coast Guard, the Corps, and the TVA broad discretion in such decisions. *See, e.g.*, 14 U.S.C. § 545 ("The [Coast Guard] *may* mark for the protection of navigation any sunken vessel or other obstruction existing on the navigable waters . . . of the United States in such manner and for so long as, in [the Coast Guard's] judgment, the needs of maritime navigation require." (emphasis added)); 33 C.F.R. § 64.33(a) ("The [Coast Guard] *may* mark for the protection of maritime navigation any structure, sunken vessel or other obstruction that is not suitably marked by the owner." (emphasis added)); 33 U.S.C. § 414(a) (providing the Corps discretion to dispose of an obstruction to navigation); 33 C.F.R. § 245.50 (giving the Corps discretion to undertake removal actions under emergency and non-emergency situations when certain conditions have been met); 18 C.F.R. § 1304.406 (providing that the "TVA *may* remove or cause to be removed any such [unauthorized] structure" (emphasis added)); *see also Cranford*, 466 F.3d at 959 ("The pertinent statute, regulations,

and internal policy allow the Coast Guard broad discretion in deciding how to mark a wreck."); *id.* at 960–61 (noting removal of wreck is discretionary); *Williams*, 581 F. Supp. at 854 ("The failure of the Government here to take any action regarding the [alleged obstruction] results from a decision (or lack thereof) entirely within the discretion of the Corps and is, therefore, unreviewable by this Court under the SAA."); *id.* ("The duty of the Coast Guard to mark objects in navigable waters is also a discretionary one.").

Although Plaintiffs contend that "general maritime duties, including the duties to act with reasonable care and warn of foreseeable dangers," removed the government's discretion here, tort duties are not a "federal statute, regulation, or policy [that] specifically prescribe[] a course of action for an employee to follow." *Gaubert*, 499 U.S. at 322 (citation modified). The relevant inquiry is whether controlling statutes, regulations, and policies mandated that the government act in a specific manner, *see id.*, and not whether the government's actions were negligent in light of duties imposed by tort law. *Gaubert* step one is thus satisfied.

So is *Gaubert* step two. Because the relevant statutes and regulations give the Coast Guard, the Corps, and the TVA broad discretion in decisions regarding obstructions to navigable waters, "it must be presumed that [their] acts are grounded in policy when exercising that discretion." *Id.* at 324. Plaintiffs failed to rebut that presumption.

The district court correctly found that the government's conduct was "susceptible to policy analysis." For example, as the

district court noted, when determining whether to mark or remove an obstruction to navigable waters, Defendants might have to weigh the needs and interests of commercial mariners against those of recreational boaters. Defendants might also be required to calculate political and environmental risks, while bearing in mind budgetary constraints. Defendants might further need to balance risks to boater safety with recreational-use opportunities. Underlying these policy considerations are assessments of the obstruction's location in relation to the navigable channel and other navigational traffic patterns, density of vessel traffic and navigational difficulty in the vicinity of the obstruction, and history of vessel incidents involving the obstruction.

This Court and others have found that governmental decisions regarding whether to mark, remove, or warn of obstructions in navigable waterways involve policy considerations and are therefore the type of decisions that the discretionary-function exception is designed to shield. *See Cranford*, 466 F.3d at 960 ("[D]ecisions in marking a wreck involve social, political, and economic policy considerations, such as taking into account the knowledge and customs of international mariners, balancing the needs of pleasure and commercial watercraft, and evaluating agency resource constraints, which include but are not limited to financial concerns."); *id.* at 961 (holding same for removal of a wreck); *Tew v. United States*, 86 F.3d 1003, 1006 (10th Cir. 1996) ("Because the Coast Guard's decision to leave the structure unmarked was both

20                    Opinion of the Court                    25-10547

discretionary and properly grounded in public policy considerations, it falls within the discretionary function exception."); *id.* at 1007 (holding same for decision not to remove structure).

Although Plaintiffs point to Defendants' ignorance of the duck blind as proof that their failure to act was not grounded in policy, the question is not whether the policies were actually considered but whether the nature of the challenged conduct is susceptible to policy analysis. *See Cranford*, 466 F.3d at 958 (observing that the "inquiry does not focus either on the subjective intent of the government agent, or on whether the agent actually weighed policy considerations, but on the nature of the actions taken and on whether they are susceptible to policy analysis" (citation modified)); *OSI, Inc. v. United States*, 285 F.3d 947, 950–51 (11th Cir. 2002) ("The exception does not require there to have been actual weighing of policy considerations." (citation modified)).

Plaintiffs' claims therefore fall within the discretionary-function exception, and sovereign immunity bars suit under the SAA. *See Mid-S. Holding*, 225 F.3d at 1204 ("Where applicable, [the FTCA's discretionary-function exception] to [the SAA's] waiver of immunity abrogates federal subject matter jurisdiction over any pursuant claim."). The district court properly dismissed Plaintiffs' claims brought pursuant to the SAA, including all of Plaintiffs' claims against the United States.

C. *Plaintiffs Can Maintain Their Action Under the TVA Act's Sue-and-Be-Sued Clause*

We have explained why the discretionary-function exception bars Plaintiffs' claims under the SAA. But we must still resolve whether Plaintiffs can instead sue solely the TVA under the TVA Act, which also contains a waiver of immunity that allows it to "sue and be sued in its corporate name." 16 U.S.C. § 831c(b). The question is whether the SAA provides the exclusive basis for bringing admiralty claims against the TVA when those claims have been barred by the discretionary-function exception we have read into the SAA. We hold that it does not. In such cases, the SAA's exclusivity does not foreclose Plaintiffs' reliance on the TVA Act's sue-and-be-sued clause as the applicable immunity waiver. Plaintiffs thus can bring suit against the TVA under the TVA Act.

The SAA is the "sole jurisdictional basis for admiralty claims against the United States," *Cranford*, 466 F.3d at 958 (citation modified), and provides that "[i]f a remedy is provided by [the SAA], it shall be exclusive of any other action arising out of the same subject matter against the . . . United States or the federally-owned corporation whose act or omission gave rise to the claim," 46 U.S.C. § 30904.

The plain text of the SAA's exclusive-remedy provision reflects its conditional nature—it applies only "[i]f a remedy is provided by [the SAA]." 46 U.S.C. § 30904. The remedy here is the action against the government. *See Justice*, 6 F.3d at 1476 n.4 ("The

[SAA] makes an action against the United States the plaintiff's exclusive remedy."); *Johansen v. United States*, 343 U.S. 427, 428–29 (1952) (noting that "petitioners [had] no remedy by way of a suit for damages under the [SAA]"); *see also McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076, 1086 (11th Cir. 2017) (en banc) ("A 'remedy' is '[t]he means by which a right is enforced or the violation of a right is prevented, redressed, or compensated.'"). If the discretionary-function exception bars Plaintiffs' claims, they are not actionable under the SAA. And if Plaintiffs cannot sue under the SAA, the SAA does not provide a remedy at all, much less an exclusive one. The SAA's immunity waiver is therefore "exclusive" of any other action against the United States or a federally owned corporation only if the claim is actionable under the SAA. *See McCormick v. United States*, 680 F.2d 345, 349 (Former 5th Cir. 1982) (holding plaintiff's claims were "actionable" under the SAA only "where the plaintiff would have an action in admiralty were the defendant a private person rather than the government").

F.D.I.C. v. Meyer, 510 U.S. 471 (1994), is instructive. There, a plaintiff brought a constitutional tort claim against a government agency subject to a sue-and-be-sued clause. *Id.* at 473–75. In considering whether the FTCA provides the exclusive remedy for tort claims against federal agencies, the Supreme Court held that exclusivity applies only to claims "cognizable" under the FTCA. *Id.* at 475–78. The plaintiff's constitutional tort claim was not cognizable under the FTCA because the FTCA covers only situations where the government would be liable as a private person under *state* law, and constitutional violations arise under *federal* law. *Id.* at 478.

Therefore, the FTCA did not bar the plaintiff from suing under the agency's sue-and-be-sued clause. *Id.*

The same reasoning applies here. Plaintiffs have no claim "cognizable" under the SAA—any claim is barred by the discretionary-function exception. Because Plaintiffs' SAA claim is not cognizable, the SAA is not exclusive and does not bar Plaintiffs from suing under another jurisdiction-conferring statute—here the TVA Act's immunity waiver, which *Thacker* recognized is not limited by any discretionary-function exception. 139 S. Ct. at 1440.

*Thacker* also undercuts Defendants' assertion that the SAA is the exclusive immunity waiver when cognizable admiralty claims are asserted against a federally owned corporation with capacity to sue and be sued. *Thacker* involved a claim that could have been pleaded in admiralty. In briefing before the Supreme Court, the TVA pointed out that Thacker could have invoked the Supreme Court's admiralty jurisdiction because Thacker was injured during a collision between a vessel and infrastructure on a navigable river. *See* Br. for TVA in Opp'n at 16–18, *Thacker v. Tenn. Valley Auth.* (No. 17-1201). But the Supreme Court weighed the TVA's suability under the TVA's sue-and-be-sued clause rather than the SAA.

For these reasons, the district court erred in dismissing Plaintiffs' claims against the TVA under the TVA Act.

## IV. CONCLUSION

We **AFFIRM** the district court's order except that portion dismissing Plaintiffs' claims against the TVA under the TVA Act,

24                        Opinion of the Court                    25-10547

for which we **REVERSE** and **REMAND** the case for further pro-
ceedings.

25-10547                KIDD, J., Concurring                1

KIDD, Circuit Judge, joined by ROSENBAUM, Circuit Judge, concurring:

More than forty years ago, this Court in *Williams v. United States* created an exception to the SAA's waiver of sovereign immunity by importing into that statute the discretionary-function exception of the FTCA. 747 F.2d 700 (11th Cir. 1984), *aff'g and adopting Williams ex rel. Sharpley v. United States*, 581 F. Supp. 847 (S.D. Ga. 1983). Since then, we have maintained that the SAA implicitly contains a discretionary-function exception that shields the government from liability for discretionary decisions. *Drake Towing Co. v. Meisner Marine Constr. Co.*, 765 F.2d 1060, 1063–64 (11th Cir. 1985); *Mid-S. Holding Co. v. United States*, 225 F.3d 1201, 1207 (11th Cir. 2000); *Cranford v. United States*, 466 F.3d 955, 958 (11th Cir. 2006). Though we are bound by this prior precedent, there is reason to question *Williams*'s continued viability.

Nothing in the text of the SAA suggests that the waiver of sovereign immunity is subject to a discretionary-function exception. *See generally* 46 U.S.C. § 30903(a). And we should not "rewrite the statute" to supply exceptions that Congress did not provide. *United States v. Hano*, 922 F.3d 1272, 1284 (11th Cir. 2019) (citation modified); *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 144 S. Ct. 457, 465–66 (2024) ("[T]he power to waive the federal government's immunity is Congress's prerogative, not ours . . . ."). Indeed, the Supreme Court in *Thacker v. Tennessee Valley Authority*, 139 S. Ct. 1435 (2019), gave effect to the plain statutory meaning of the TVA Act's broad sue-and-be-sued waiver when it rejected the

TVA's argument that its discretionary decisions were immunized from tort liability. *Id.* at 1440–41. Although the majority opinion holds that the Supreme Court's decision in *Thacker* did not abrogate this Court's precedent, *Thacker*'s reasoning certainly weakened the justification for *Williams* and its progeny.

I concur in the majority opinion in full because I believe we are bound by the prior-precedent rule. *United States v. Emmanuel*, 565 F.3d 1324, 1332 (11th Cir. 2009) ("We are bound to apply the precedent of a prior panel even if we are convinced that the prior panel is mistaken about the proper analysis . . . ."); *United States v. Kaley*, 579 F.3d 1246, 1255 (11th Cir. 2009) ("We may disregard the holding of a prior opinion only where that holding is overruled by the Court sitting en banc or by the Supreme Court." (citation modified)). But I write separately because I believe that we should rehear this case en banc to consider the continuing viability of *Williams*.